## Case No. 15,779.

UNITED STATES v. MILWAUKEE & ST. P. RY. CO.

[5 Biss. 420.] [1]

Circuit Court, W. D. Wisconsin. Sept., 1873.

BRIDGES—NAVIGABLE WATERS—POWER TO LOCATE —CONDITIONS PRESCRIBED BY SECRETARY OF WAR.

1. The federal courts will not review a decision of the head of the department on a matter referred to him by congress for determination.

2. In the construction of statutes courts should give to words their ordinary meaning.

3. In the act of June 4th, 1872 [17 Stat. 215], congress designed that the secretary of war should locate the bridge across the Mississippi river, to accommodate all the interests involved.

4. By the fourth section of the act of April 1st, 1872 [17 Stat. 46], the secretary of war had authority to pass upon the location of the bridge, and this court will not review his decision, but will assist in enforcing it.

---

[1] [Reported by Josiah H. Bissell. Esq., and here reprinted by permission.]

5. The secretary having disapproved a location selected by the company, it has no right to construct a bridge at that point.

6. A disapproval by the secretary is binding, though not expressed in the manner and form required by the act.

7. Where congress has prescribed the limitations and conditions upon which a bridge may be constructed, a company has no right to build a bridge otherwise.

8. The federal courts have jurisdiction of a suit by the United States to restrain the placing of obstructions in its navigable waters.

[This was a motion for an injunction to restrain the defendants from building a bridge across the Mississippi river, in the vicinity of La Crosse. For hearing on an application for preliminary injunction on bill and affidavits, see Case No. 15,778.]

HOPKINS, District Judge. The right of the government to the injunction applied for is based upon the decision or action of the secretary of war under the authority conferred on him by section five of the act of April 1st, 1872 (17 Stat. 46), and by the act of June 4th, 1872 (17 Stat. 215). The extent of that authority is the first question to consider and settle.

It is claimed by the plaintiff that by those acts he was empowered to pass upon the question of the location of the bridge by the company; that the right given to them by the eighth section of the act of April 1st, supra, to select the point to build the bridge was subordinate to the judgment of the secretary of war; that the selection by the railroad company was not final, but subject to the approval or disapproval of that officer.

If this is the true construction of the acts, the power of the court in the premises is greatly restricted, for we think the doctrine is well settled by the United States supreme court, in an unbroken series of decisions, that when a matter is referred to one of the heads of the department for his determination which involves the ascertainment of questions of fact in order to a proper exercise of his judgment, that the decision of such officer is conclusive, unless the act conferring the authority, or some other act, authorizes an appeal or review of such decision. U. S. v. Wright, 11 Wall. [78 U. S.] 648.

This court, therefore, is not authorized to review his decision or inquire whether his reasons assigned for it are sufficient, if the acts clothe him with such authority. If such an officer, in the discharge of the duty imposed upon him, makes a mistake, the remedy of the party injured is by appeal to the law-making power, and not to the courts.

The defendant denies that the secretary was authorized by either of the acts above referred to to pass upon the question of the location of the bridge, and insists that their right to locate the point to build the bridge was absolute, and that the power of the secretary related only to the manner of constructing, and to the plans of the bridge and

the way and manner of "locating" the bridge at such place; that the word "locate" has reference to the position and construction of the bridge at the point selected by the company, and that the secretary's action in disapproving the location, and his claim to decide that question, were without authority and void; also that the word "locating," used in the act of June 4th, must be held to have been used in the same sense; that the direction to the secretary in that act, to have regard to the convenience and accessibility of other railroads and highways to the place selected, related to the mode of construction so as to accommodate such interests, but did not allow him to forbid the building of the bridge at such point. This, I think, is too narrow and restricted a meaning to give to the word "locate" as used in these acts.

Courts in the construction of statutes are to give to words their ordinary meaning; to presume that they were used by congress in their ordinary sense; neither to enlarge nor restrict unduly their signification, and if possible give to every word its full meaning; when that is impossible, to give such construction as best to carry out the intention of the legislature as gathered from the whole act.

To my mind the act of June 4th throws great light upon the meaning of congress on the subject. They are charged with the duty of preserving and protecting the free navigation of the Mississippi river. They have exclusive jurisdiction over that subject, and as it has now become necessary in the march of improvement, and to satisfy the demands of commerce, to permit transit across the river by means of bridges, which, however skillfully planned and constructed, do, to some extent, interfere with the free use of the river, it is their duty to limit the number of such bridges as much as possible; and in order to accomplish that purpose, it seems to me that congress, by the act of June 4th, supra, ordained that, in addition to the authority conferred by the fifth section of the act of April 1st, that "in locating any such bridge, the secretary of war shall have due regard to the convenience and security of navigation, to the convenience of access and to the wants of all railways and highways crossing said river." The object of this provision, to my mind, was to require the secretary of war to have the bridge located so as to accommodate all those interests, and thus prevent the multiplicity of bridges at the same locality.

I cannot conceive of any other purpose for directing the secretary in the discharge of his duties under the act to have regard to such other interests. The fourth section of the act of April 1st authorizes the secretary to prescribe the terms and conditions upon which other railroad companies may use such bridge. Thus the intention of congress is manifest, that the secretary of war was clothed with the authority of passing upon the question of locality, and might, as a matter of course, disapprove of any location that should not

fulfill the conditions of the act; that therefore he had jurisdiction and authority to pass upon the question whether the place selected by the defendants would fulfill the conditions and requirements of the act, and having decided that it would not, the court cannot review his decision; but must, to the extent of its power, assist in enforcing it when appealed to for that purpose.

It is unnecessary to pass upon the question of the right of the secretary to locate a bridge; but if he has the authority to reject the location of the defendants, practically as well as logically, such power would spring from his right to negative all selections or locations made by others. But this is perhaps immaterial to the decision of this motion, and it is noticed simply because it was so earnestly pressed upon our attention on this argument.

The attorney-general, in his opinion read on the argument, holds that the secretary had not the authority to locate, by which I presume he meant primarily, but had the authority to disapprove of a location selected by the company, and that when he does so, the bridge cannot be constructed by the company at such point. That construction is in accordance with my interpretation of the law.

The defendant has made a very strong case in the affidavits read on this motion upon the merits of the case, and has shown by affidavits of men skilled in the navigation of the river, and in the construction of railroad bridges over navigable waters, that this location is less injurious to the navigation of the river than the one indicated by the secretary of war; and that it is equally as convenient and accessible to other railroads and highways. If we were at liberty to pass upon that branch of the case, we should feel compelled to hold so. But, as before stated, we think we are not authorized to consider that question on this motion. In saying this we do not mean to be understood as questioning the correctness of the decision of the secretary, for he evidently had not this evidence before him when he made his decision. and what we say touching the merits is predicated upon the facts proven before us on this motion.

The question was raised by defendant that the secretary had not disapproved of the location in the form and manner as required by the act. It may be that his proceedings have not been strictly formal, but we find no difficulty in discovering from the records that he had repeatedly disapproved of the location, and had finally notified the defendants that the matter was fully settled and closed as far as he was concerned, so that the objection is not tenable.

It was also claimed by the counsel for the defendant that they had a right to build a bridge without the authority of congress. Suppose that to be so in places where congress have not acted on the subject, I think the right does not exist where congress have acted and prescribed the limitations and conditions upon which a bridge may be constructed, as they have done in this case. Wilson v. Blackbird Creek Manuf'g Co., 9 Wheat. [22 U. S.] 1.

The objection that the court has not jurisdiction, and that the United States cannot maintain a suit in this court to restrain the placing of obstructions in its navigable waters within this district, and to compel their removal, is not sustained by the authorities, and it is sufficient to say that the right of the government to proceed in equity by bill in such cases is clear upon principle and authority.

I therefore think that the motion of the plaintiff for the injunction to restrain the defendants from building the bridge across the Mississippi river at the point mentioned should be granted, and an injunction for that purpose will issue in accordance with the prayer of the bill.